UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

NILSA FRANCO,

              Plaintiff,


              -against-                           Case No.: **14-cv-1909(ILG)(RER)**

ADA DIAZ, JULIO DIAZ, and
MAXIMINA VARGAS,

              Defendants.
-----------------------------------------------------X




**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL
MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE
A CLAIM UPON WHICH RELIEF CAN BE GRANTED
<u>AND TO AMEND THEIR COUNTERCLAIMS</u>**




                                    Avallone & Bellistri, LLP
                                    By: Rocco G. Avallone, Esq.
                                    Attorneys for the Defendants
                                    3000 Marcus Avenue, Suite 3E7
                                    Lake Success, N.Y. 11042
                                    (516)986-2500

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ...................................................................... 2

POINT I .......................................................................................................... 5

PLAINTIFF'S COMPLAINT AS TO THE FIRST, SECOND, THIRD, TENTH   AND ELEVENTH CUASE OF ACTION MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM THAT IS PLAUSIBLE ON ITS

A. The Standard for Granting a Motion to Dismiss for Failure to State a Claim ……………………………………………..5

B. Plaintiff's Causes of Actions Under 18 U.S.C. § 1595  First, Second and Second and Third Causes of Actions)……………………………………6

C. Plaintiff's Causes of Actions for Infliction of Emotional Distress (Tenth and Eleventh Causes of Actions)……………………………………9

D. Plaintiff's Causes of Actions for Battery (Twelfth Causes of Actions) Must Be Dismissed………………………………………12

POINT II.......................................................................................................... 13

PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS ...................................................................... 13

A. Defendants have not Caused Undue Delay…………………………15

B. The Amendment to Answer and Counterclaims is Not Done in Bad Faith...................................................................................15

C. There Are No Prior Deficiencies for Defendants to Cure…………………16

D. Granting the Amendment Will Not Prejudice Plaintiff ................................16

E. The Amendments to the Answer and Counterclaims are not Futile .................17

2. Defendants' Second Counterclaims For Intentional Infliction of
   Emotional Distress Should Not Be Dismissed.........................................17

CONCLUSION...................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                      **Page**

Ashcroft v. Iqbal
_____ U.S. _____, 129 S. Ct. 1937, 1949 (2009)(internal
citations omitted)......................................5,6

Baez v. Jetblue Airways
745 F. Supp. 2d 214, 224 (EDNY 2007).....................17

Bell Atlantic Corp. v. Twombly
550 U.S. 544, 570 (2007).................................5

Block v. First Blood Associates
988 F. 2d 344, 350 (2d Cir. 1993)........................16

Burrell v. City Univ. of New York
995 F. Supp. 398, 416 (SDNY 1998)........................10

Church of Scientology of California v. Siegelman
94 F.R.D. 735 (SDNY 1982)................................17

Conley v. Gibson
355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)....5

Foman v. Davis
371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)..14

Howell v. New York Post Co.
81 N.Y.2d 115, 122, 612 N.E.2d 699, 702 (1993).........9,10

King v. American Airlines, Inc.
284 F.3d 352, 356 (2d Cir. 2002).........................5

Lipton v. Unumprovident Corp.
10 A.D.3d 703, 706, 783 N.Y.S.2d 601, 603 (2nd Dept. 2004) 11

Lobo Recording Corp. v. Waterland
197 F.R.D. 23 (EDNY 2000) ...............................14

Milillo v. Milillo
193 Misc. 2d 265, 748 N.Y.S.2d 850 (Fam. Ct. Albany
Cnty. 2001).............................................12

Monahan v. New York City Dept. of Corrections
214 F. 3d 275, (2d Cir 2000)...............................14

Neufeld v. Neufeld
1994 U.S. Dist. LEXIS 7923 (SDNY 1994)....................10

Perks v. Town of Huntington
96 F. Supp. 2d 222, 230 (EDNY 2000)......................9,10

Rachman Bag Co. v. Liberty Mutual Insurance Co.
46 F.3d 230, 234 (2d Cir. 1995)...........................14

Resorts and Motel Advancement Development Agency v. Sloan
160 F.R.D. 449 (SDNY 1995) ...............................15

Sheppard v. Beerman
18 F.3d 147, 150 (2d Cir. 1994............................5

Silva Run Worldwide Limited v. Gaming Lottery Corp.
215 F.R.D. 105, 106 (SDNY 2006).......................14,17

Singh v. U.S. Sec. Assoc.
2005 U.S. Dist. LEXIS 1407 (SDNY 2005)....................9

Velez v. Sanchez, et al.
754 F. Supp.2d 488 (EDNY 2010)..........................6,7

**Statutes:**

18 U.S.C  §1589..........................................6

18 U.S.C. §1595......................................... 6

Fed.R.Civ.P. §12(b)(6)..................................2,5

Fed.R.Civ.P. §13(f)...................................14,15

Fed.R.Civ.P. §15(a)...............................14, 15,16

C.P.L.R §215(3)..........................................13

N.Y. Family Court Act §812(1)............................12

## PRELIMINARY STATEMENT

Defendants ADA DIAZ, JULIO DIAZ, and MAXIMINA VARGAS submit this Memorandum of Law in Support of their Motion To Dismiss the "FIRST", "SECOND", "THIRD", "TENTH" and "ELEVENTH" Causes of Action in the Complaint pursuant toRule 12(b)(6) of Fed. R. Civ. P.  Plaintiff asserts several claims, none of which are supported by allegations that would plausibly state a claim for relief, and several of which also fail on other independent grounds, as set forth below including a Statute of Limitation Violation.  The Defendants' Counter Motion to Dismiss asks the Court to resolve the legal question as to what manner of allegations is required to support a claim for wages by one family member against another for work done solely within the family abode and for claims of tortious conduct by one family member against another where the complained of acts occurred in the family home. Plaintiff's position, as far as can be gleaned from the Complaint, is that the Court should treat family members no differently from those who deal with each other in commerce at arm's length, and should allow them to sue each other willy-nilly.

Furthermore, Defendants move to amend their Answer with Counterclaims within the time limit of the Case Management Plan and Statute of Limitations to add separate causes of action for Libel, Slander and Defamation.

## BACKGROUND

On or about March 26, 2014, Plaintiff, Nilsa Franco, filed a Summons and Complaint against her Aunt Maximina Vargas, her cousin Ada Diaz, and her cousin-in-law Julio Diaz. Defendants were served with the Complaint and filed their Answer with Counterclaims via their

former attorney Michael Barrows on or about May 6, 2014. A copy of the Complaint and

Answer with Counterclaims are attached as **Exhibit "A"**.

The Complaint, to which this motion responds, recounts the story of how the Defendants

allegedly took their cousin and niece, respectively, with the permission of Plaintiff's parents, out

of Fernando de la Mora, a poor town in Paraguay into their home and under their care, who did

not speak English and who had never lived away from her home in Paraguay and who came in to

the United States on a temporary work visa (H-1B Visa) petitioned by Plaintiff's Aunt,

Defendant Vargas so that Plaintiff could help her Aunt, Maximina Vargas, recover from knee

surgery in February 2007 – giving her free room and board and the opportunity to experience life

in a different, far more prosperous and advanced country, allowing Plaintiff to live independently

from her parents as she desired to do.  Defendants then had the audacity, the Complaint alleges,

standing *in loco parentis* with the Plaintiff's own parents thousands of miles away, and with the

young Plaintiff in the midst of one of the world's largest, most complex, sophisticated and

potentially dangerous metropolises, to supervise and monitor her while paying her for her help in

caring for her Aunt and subsequently her little cousins, the children of Ada and Julio Diaz.

Plaintiff alleges that Defendants dared to shout at her from time to time ("verbal abuse") and

assaulted her in 2012 yet there is no mention in the complaint of her calling the police or to file a

complaint of an attempted rape or any other abuse by the Defendants.  In fact, the Complaint

alleges that Plaintiff did not contact the police until October 28, 2013, well over one year after

the alleged attempted rape.  It should be noted that the Complaint is void of any police

involvement or prosecution of Defendant Diaz regarding the alleged rape but said false

allegation has been published with the NYPD and will remain in Defendant Julio Diaz's

personnel file damaging his ability to advance within the NYPD. The reason why the police

investigation resulted in no criminal charges or disciplinary charges being brought against Mr. Diaz is simply because there never was any attempted rape. Defendant Julio Diaz was never charged with any crime let alone accused by the Plaintiff until well over a year had passed and after Plaintiff began to associate with the so called "concerned neighbor" who upon information and belief was and still is Plaintiff's boyfriend who she would freely socialize with out of the home of Ada and Julio Diaz and spent nights at his home without telling her cousin, Defendant Ada Diaz. It should be noted that Plaintiff is now pregnant and, upon information and belief, by this so called "concerned neighbor". Standing *in loco parentis,* this caused Ada Diaz to worry for Plaintiff's safety especially when Plaintiff would not return at a respectful hour causing Defendant Ada Diaz to make phone calls to Plaintiff's cell phone, that the defendants gave her, to see where she was and make sure she was safe. Plaintiff would go out at night, including the night of October 27 to October 28, 2013 where she admits in her Complaint that she stayed out all night and did not return home until 5:30 am (Complaint ¶57). The Complaint is also void of any allegations that Plaintiff suffered any physical injury as a result of the so called abuse by the Defendants.

The Plaintiff admits that she was giving room and board by the Defendants and never once paid a penny to them for living in their home and eating their food. There is no allegation anywhere in the Complaint that Plaintiff ever paid rent to the Defendants or that any person, including Plaintiff's parents (Defendant Diaz's Aunt and Uncle and Defendant Vargas' Brother and Sister-in-Law) ever paid the Defendants any money or provided any kind of support whatsoever for Plaintiff during her stay with Mr. and Mrs. Diaz. For all these reasons, it is obvious that even if there were no legal connection between the Defendants and Ms. Franco, the Court would still be constrained to recognize the equivalent of family kinship between them.

**ARGUMENT**

**POINT I**

**PLAINTIFF'S COMPLAINT AS TO
THE FIRST, SECOND, THIRD, TENTH AND ELEVENTH CAUSES
OF ACTION MUST BE DISMISSED FOR FAILURE
TO STATE A CLAIM THAT IS PLAUSIBLE ON ITS FACE**

**A.  The Standard For Granting A Motion To Dismiss For Failure To State a Claim**

The applicable legal standard for a motion to dismiss a complaint under Rule 12(b)(6) are

that the court must accept as true the allegations contained in the complaint and draw all

reasonable inferences in favor of the nonmoving party.  Dismissal of a complaint pursuant to

Rule 12 is appropriate only where "it appears beyond doubt that the Plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *King v. American Airlines, Inc.*

284 F.3d 352, 356 (2d Cir. 2002); *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S.

Ct. 99 (1957); accord *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Cause of Action

"FIRST", "SECOND", and "THIRD" set forth in the Complaint cannot survive that scrutiny.

Plaintiff has failed to plead facts adequate "to state a claim for relief that is plausible on its face"

in order to survive a motion to dismiss under Rule 12 (b)(6).  *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal

citations omitted).  The Supreme Court explained the plausibility standard in *Iqbal*, stating that

"[w]here a complaint pleads facts that are merely consistent with a Defendant's liability, it stops

short of the line between possibility and plausibility of entitlement to relief." See id.  The fact set

forth in the Plaintiff's complaint "must be enough to raise a right to relief above the speculative

level." *Twombly*, 555 U.S. at 555.  A party's "obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions…" Id. (internal quotation marks and alteration omitted); *Iqbal*, 129 S. Ct. at 1949-50. A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. at 1950.

**B.  Plaintiff's Causes of Actions Under 18 U.S.C. §1595 (FIRST, SECOND and THIRD Causes of Actions)**

In 2003, Congress enacted the Trafficking Victims Protection Reauthorization Act and codified at 18 U.S.C. §1595. "Forced Labor" per 18 U.S.C. §1589 , is labor obtained through one of four means: (1) force or the threat of force; (2) serious harm or threat of serious harm; (3) abuse or threatened abuse of law or the legal process; and (4) "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." *Velez v. Sanchez, et al*, 754 F. Supp.2d 488 (EDNY 2010).   The complaint is void of any facts that would show that Ms. Franco was actually forced, harmed, and or physically restraint. Plaintiff's claims lack any allegations that she was subjected to force of any kind in order to force her to work for the defendants. In fact, the Complaint admits that Plaintiff voluntarily came over to this country, with the help of her Aunt, Defendant Vargas, with a Work Visa which would lead a reasonable person to believe that she willingly came here to work and not forced. Plaintiff alleges that she suffered verbal abuse without any real details other than "in substance" being called "stupid", she could not do anything right, and that she was ungrateful for all Defendants had done for her. (Complaint ¶ 41). None of which would reach a level of any of the four means that would substantiate forced labor per §1589. Additionally, <u>verbal abuse is not actionable under §1595</u>

6

under less it carries with it a threat of force or serious harm. *Velez* at 498. Plaintiff admits to being at the school of the Diaz's school (Complaint ¶ 44) and actually told the Diaz children on trips outside the neighborhood and when to parties with the family as seen in the photographs attached hereto as **Exhibit "B"**. This clearly shows that Plaintiff's alleges that she did not venture out of their neighborhood is frivolous. Plaintiff admits going out at night and not coming home until 5:30 am (Complaint ¶ 57). Plaintiff has a boyfriend, who she identifies as a "concerned neighbor" and is pregnant by him. She admits to having a cellphone (which in fact was giving to Plaintiff by Defendant Ada Diaz) and if she believed she was a victim of Human Trafficking and involved in "Involuntary Servitude or Forced Labor", she could have called her parents, her boyfriend, posted a message on her Facebook page which she has had for many years while living with the Defendants Diaz, called the police with the use of her cell phone, told someone at the English class that she was taking at night unescorted or the computer workshop she attended at the children's school P.S. 150 also unescorted, local church staff where she would go on Sunday for mass, and an infinite amount of other avenues that she could have utilized to "escape" from her relatives if in fact she was being forced to work against her will! The Complaint is tailored to the statute but void of any concrete allegations of Human Trafficking into forced labor. No reasonable person could conclude based on the reading of the complaint caused Plaintiff, Ms. Franco, to believe that she had not been free to leave the Diaz House during the years that she lived with them. In fact, Plaintiff came and went as she pleased when she was not watching the Diaz children, for which she admits she was being paid. (Complaint ¶¶ 31, 39-40). Furthermore, the complaint does not make any allegations that Plaintiff tried to leave or told Defendants that she wanted to leave. She was making as much as $800.00 a month with no claims in the complaint of any expenses or major bills that she was

required to pay, yet she never alleges that she attempted to find another place to live or notify her parents that she wanted to leave because she was being abused by the Defendants. Plaintiff admits to going to local Laundromat (Complaint ¶49) and in 2011 having an understanding to contact the Department of Labor regarding the current wage rate but never calls throughout her time when she resided free of charge at the Diaz home. None of which are indications that Plaintiff was a prisoner and forced into working for the Defendants.

The complaint is also lacking any allegations that a reasonable jury could conclude that Plaintiff faced a threat of force or serious harm if she attempted to leave. The complaint clearly establishes that Plaintiff made a voluntary choice to stay so she could make a life for herself in the United States. The alleged possible restraint alleged here was nothing more than normal "parental" control per *in loco parentis* which is not only normal giving the fact that Plaintiff's parents entrusted their daughter to the care and supervision of the Defendants i.e. being yelled at for coming home at 5:30 am after being out all night without contacting Mrs. Diaz, but in fact requisite to avoiding a charge of neglect from the Plaintiff's parents in Paraguay and even more so when the Plaintiff cousin/niece is an absolute novice to her literally foreign surroundings giving Plaintiff's allegation in the complaint at paragraph 43 that she didn't venture out of their neighborhood. Plaintiff states in her complaint that she was left alone at the house (Complaint ¶ 38) or she would go to the children's school (Complaint ¶ 44) or go to the Laundromat where she met her boyfriend (Complaint ¶ 49). None of these alleged facts create an atmosphere of slavery by the Defendants against the Plaintiff. There are no allegations that Defendants withheld medical care for the duration of her residency with the Defendants or that she could not purchase basic necessities such as personal toiletries and no allegations that the defendants had denied Plaintiff a means of exiting their home. Plaintiff admits in the Complaint that she was aware of

8

the existence of the consulate but the complaint makes no allegation of her ever trying to contact

them to complain of human trafficking.  These facts are not the indicia of a condition of human

trafficking and involuntary servitude or forced labor.  Moreover, entirely to the contrary, the

complaint freely admits that Defendants "threatened" to send Plaintiff back to Paraguay

(Complaint ¶ 42) and she was in "fear" and believed that she would actually be sent back

(Complaint ¶ 43); in order words, not only did Defendants not keep Ms. Franco prisoner, they

specifically stated that they would return her to her former life, and it was Plaintiff who refused

to go.  Only after meeting her boyfriend (the "concerned neighbor") does she create these

allegations solely to create the stage for a means to remain in this country knowing that she is to

give birth and needs to find a way to stay.

C.     **Plaintiff's Causes of Actions For Infliction of Emotional Distress**
       **(TENTH and ELEVENTH Causes of Actions)**

       1. **Plaintiff cannot state a claim for Intentional Infliction of Emotional Distress**

       To prevail on an intentional infliction of emotional distress claim, Plaintiff must prove

that "the defendants (1) engaged in extreme and outrageous conduct; (2) with the intent to cause

severe emotional distress; (3) with a causal connection between the conduct and the injury; and

(4) severe emotional distress." *Singh v. U.S. Sec. Assoc.*, 2005 U.S. Dist. LEXIS 1407 (SDNY

2005); *Perks v. Town of Huntington*, 96 F. Supp. 2d 222, 230 (EDNY 2000).   The Singh court

stated: "This is a difficult showing to make. Indeed, as the New York Court of Appeals noted in

*Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 702 (1993), every

intentional infliction of emotional distress claim to have come before that court failed because

the alleged conduct was not sufficiently outrageous.  To prevail on this aspect of his claim, Singh

must show that the conduct was so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society].).”   There is no liability unless the conduct complained of “has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.” *Perks* at 230 (quoting *Howell v. New York Post Co.*, 81 N.Y. 2d 115, 122 (1993); It is rare for intentional infliction of emotional distress claims to succeed in the employment context, as typical harassment and retaliation claims do not meet this stringent standard.  See *Perks* at 230; *Burrell v. City Univ. of New York*, 995 F. Supp. 398, 416 (SDNY 1998).

It is not very hard to imagine that any claim for intentional infliction of emotional distress that Plaintiff may feel she has is returned in spades by Defendants, and if the pleading threshold is low enough to admit Plaintiff's claim on this ground, then it must also admit the claim of the Defendants with the net result being that the claims simply cancel each other out.  The previously quoted high standard can rarely be met with a claim by one family member against another.  What is required in such a case is specified, for example, in *Neufeld v. Neufeld*, 1994 U.S. Dist. LEXIS 7923 (SDNY 1994).  In *Neufeld*, the Defendant was accused of drugging the Plaintiff's mother and seeking to confine her to a psychiatric institute, lying to a bank officer, contacting various governmental bodies with false complaints and causing a federal investigation to be commenced.  Moreover, a pecuniary motive was alleged in Neufeld which is not only not present here, but the converse is true; it would be patently absurd if it were the conscious plan of the Defendants to psychologically destroy the psyche of Plaintiff, with whom, according to the complaint, Defendant Diaz charged the full time care of their young children.  Thus, the allegations in *Neufeld* do not remotely resemble those here.

10

## 2. Plaintiff cannot state a claim for Negligent Infliction of Emotional Distress

Negligent infliction of emotional distress is a claim even further beyond Plaintiff's legal means. Such a claim "generally must be premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety." *Lipton v. Unumprovident Corp.*, 10 A.D.3d 703, 706, 783 N.Y.S.2d 601, 603 (2nd Dept. 2004) (citing numerous authorities, omitted). It is well settled that a claim of negligent infliction of emotional distress must fail if plaintiff's complaint neglects to set forth endangerment of physical safety or apprehension thereof. In the case at bar, Plaintiff's complaint is void of believable allegations that the physical safety of Ms. Franco was ever in danger. As previously stated, the complaint establishes that Plaintiff was not imprisoned or enslave by the Defendants. Rather, she was free to come and go as she pleased within reason i.e. staying out until 5:30 am with her boyfriend was clearly not an acceptable conduct for which Defendant Ada Diaz clearly expressed to Plaintiff when she returned home the next morning to work (Complaint ¶ 57-58). Fear for her physical safety flies in the face of the allegation in the complaint that she spent the night at someone else's house yet she had no trepidations coming back home to bring her work! As for the allegation that Defendant Julio Diaz attempted to rape her in April 2012, which is countered in 3 small paragraphs of the complaint (Complaint ¶¶ 46-48), as previously mentioned the complaint is void of any mention of this false allegation to the police or any authority. The complaint does not state that Plaintiff ever told the police, even after her attorney went to the 108th Precinct "to report the need for a police escort", that Defendant Diaz was questioned, interviewed, investigated, arrested, criminally charged or that Mr. Diaz was even spoken to by the police on or after October 2013 (Over 1 year after this so called "attempted rape" that no one has any record of). If in fact this was true, why would Plaintiff return home on April 28, 2013? Plaintiff

11

continued to socialize with the entire Diaz family for over a year after the alleged "attempted rape" and never once saying anything to her friends on Facebook; the police friends that she knew and had phone numbers to that where on her cell phone directory which was giving to her by Defendants; her parents whom she communicated with on a regular basis and even send money back to Paraguay for them from her salary she received from the Defendant Ada Diaz; or staff at the school where she was taking English and computer classes. The complaint simply alleges that the police came to the house in April <u>2013</u> to escort her so she could get her property and leave and get any wages owed to her without ever mentioning an "Attempted Rape" allegation reported to the police (Complaint ¶¶ 61-63).

Therefore, it is further respectfully submitted that as a matter of law Plaintiff's complaint is deficient on its face, and any cause of action sounding in intentional infliction of emotional distress and negligent infliction of emotional distress should be summarily dismissed.

D.   **Plaintiff's Causes of Actions For Battery (TWELFTH Causes of Actions) Must Be Dismissed.**

Under the New York Family Court Act §812(1), charges of battery and assault between family members are directed to the Family Court rather than being treated as a normal criminal offense.  As explained in *Milillo v. Milillo*, 193 Misc. 2d 265, 748 N.Y.S.2d 850 (Fam. Ct. Albany Cnty. 2001, for example, this reflects "the recognition that many criminal prosecutions were pressed by complainants who were not necessarily concerned with the public aspect of the crimes perpetrated, but instead were using the charges as a means, often inadequate, to improve or otherwise alter their family relationship."

As for the claim of Battery against Defendant Julio Diaz,  said claim must be dismissed because the claim was not made within one (1) year of the Statute of Limitation for Assault and

Battery under C.P.L.R §215(3).  The allegation of offensive touching of the Plaintiff by Defendant Julio Diaz occurred on April 2012 (Complaint ¶¶ 46 and 132).  The Summons and Complaint was not filed until March 26, 2014, well pass the Statute of Limitation of 1 year.

As for the claim of Battery against Defendant Ada Diaz (Plaintiff's Older Cousin), are solely on one occasion (the day she left the Diaz resident on October 28, 2013 after speaking with a lawyer) she "pushed Plaintiff" or "shoved Plaintiff" (Complaint ¶ 59 and ¶ 128).  This allegation obviously does not satisfy the pleading requirement even outside the family context, much less within it.  If they did, the courts would be deluged with cases every time a guardian or a quasi-parent tried to discipline a ward or child.  Obviously, Plaintiff was not a child but as previous stated the *in loco parentis* doctrine places Ada Diaz, Plaintiff's older cousin, who is caring for (room and board, computer, and cellphone) and supervising Plaintiff while she is in this country and stands in the shoes of Plaintiff's parents should be allow to question Plaintiff if she decides to spent the night at a boyfriend's house without Mrs. Diaz's knowledge and not answering text messages or her cell phone when Ada Diaz was franticly trying to locate her.  As such, the Battery Claim against Defendant Ada Diaz should also be dismissed.

## POINT II

### PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

1.    Defendants voluntarily consent to discontinue their "FIRST", "THIRD" and "FOURTH" counterclaims and request permission to amend their pleading correct any typos and to add further counterclaims based on **Libel, Slander and Defamation** as new counterclaims. This firm was retained as substitute attorneys for the defendants after the prior attorney was

discharged on June 9, 2014 and as such did not play a role in the submission of the Answer with Counterclaims.

According to the Case Management Plan so ordered by Magistrate Judge Ramon E. Reyes, Jr. on May 27, 2014, "No amendment of the pleadings will be permitted after: 30 days after the completion of depositions." See **Exhibit "C"**.   Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000).  The Supreme Court has found that "grant or denial of an opportunity to amend is within the discretion of the District Court" but that refusal to grant leave to amend a pleading without justification is "inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); Silva *Run Worldwide Limited v. Gaming Lottery Corp.*, 215 F.R.D. 105, 106 (SDNY 2003).  The Courts consider 5 factors when deciding whether to grant leave to amend: (1) undue delay; (2) bad faith or dilatory motive on the part of movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Foman* at 182; *Rachman Bag Co. v. Liberty Mutual Insurance Co.*, 46 F.3d 230, 234 (2d Cir. 1995); *Lobo  Recording Corp. v. Waterland*, 197 F.R.D. 23, 26 (EDNY 2000).   In this case, these factors weigh heavily in the Defendants'/Movants' favor.  Should this court view the new counterclaims as compulsory counterclaims under Fed. R. Civ. P. 13(f) which states that "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires the pleader may by leave of court set up the counterclaim by amendment." *Lobo  Recording Corp* at

25. Rule 13(f) is to be read in conjunction with Rule 15(a). *Resorts and Motel Advancement Development Agency v. Sloan*, 160 F.R.D. 449, 451 (SDNY 1995).

**A. Defendants have not Caused Undue Delay**

As previously stated, the Case Management Plan was only entered into on May 27, 2014 before Magistrate Judge Ramon E. Reyes, Jr.  This law firm was just retained in early June and after reviewing the file and speaking with the clients it has become clear that they have a viable cause of action against the Plaintiff for Slander and Defamation for publicizing false allegations of battery against the Diaz Defendants to the police solely to obtain an advantage for remaining in this country.  Defendants submitted their Answer on or about May 12, 2014.  Plaintiff has not even filed a Reply to the Counterclaims but chose to file a motion to dismiss.  Also there has been little discovery at this point give the motion practice.  The initial Rule 26 disclosure are the only discovery documents exchanged – Plaintiff's on or about June 3, 2014 and Defendants' on or about June 18, 2014.  On July 8, 2014, Defense counsel did attempt to contact Ms. Alice Davis to obtain her consent to amend the counterclaims to include Slander and Defamation by telephone.  Ms. Davis did not answer her phone and I left a message for her to call me back. I also sent out an e-mail requesting her consent.  Plaintiff informed movant that she will not consent so I had no alternative but to make this motion to amend.   Indeed, Defendants have not caused any undue delay in this case.  The Second Circuit has permitted amendment where leave to amend was sought.

**B. The Amendment to Answer and Counterclaims is Not Done in Bad Faith**

The Defendants' motion to add counterclaims to their Answer is a direct result of investigation, review of file, and discussions between the Defendants and Counsel.   There can

15

be no reasonable suggestions by the Plaintiff that this motion to amend is motivated by bad faith.

Defendants have denied the Plaintiff's allegations of Battery and Attempted Rape in their

Answer.  Plaintiff admits in her Complaint that she spoke with the police and reported the

alleged abuse resulting in investigation by NYPD.  The police were sent to the Diaz home by

Plaintiff during the day in full view of their neighbors causing embarrassment and humiliation.

### C.  There Are No Prior Deficiencies For Defendants to Cure

Failure to cure prior deficiencies is not relevant since Defendants have not made any prior

amendments to the Answer and Counterclaims.

### D.  Granting the Amendment Will Not Prejudice Plaintiff

In order to determine if a party is prejudice regarding a motion to amend under Rule

15(a), the Second Circuit considers whether the assertion of the new claim would (1) require the

opponent to expend significant additional resources to conduct discovery and prepare for trial;

(2) significantly delay the resolution of the dispute; or (3) prevent the opposing party from bring

a timely action in another jurisdiction." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d

Cir. 1993).   In this case, Plaintiff has yet to take any depositions of Defendants and their

witnesses.  Any documents or discovery relevant to the slander and defamation claims can be

obtained with the same amount to time and expense as the discovery for the remaining claims in

the case, if not less.  The proposed amendment would neither require Plaintiff to expend

significant additional resources to conduct discovery and prepare for trial, nor significantly delay

the resolution of the case.  In fact, it may help in the resolution of the case.  However, since the

Statute of Limitation for Slander and Defamation is 1 year, Defendant can still being these

claims in State Court which would only cause an economic burden on all parties to litigate in 2 separate court houses regarding related facts.

### E.  The Amendments to the Answer and Counterclaims are not Futile

The Defendants' proposed amended counterclaims sufficiently plead facts to support the allegations. See **Exhibit "D"**.

Therefore, due to the liberal rules governing the amendments of pleadings and the abovementioned reasons this Court should grant the motion to amend the Answer with Counterclaims. See *Silva Run* at 107.

### 2.  Defendants' Second Counterclaims For Intentional Infliction of Emotional Distress Should Not Be Dismissed

To state a counterclaim for intentional infliction of emotional distress, Plaintiff's conduct must have been extreme and outrageous. *Church of Scientology of California v. Siegelman*, 94 F.R.D. 735 (SDNY 1982).   Under New York Law, the claim requires a showing of (a) extreme and outrages conduct; (b) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (c) a causal connection between the conduct and the injury; and (d) severe emotional distress.  *Baez v. Jetblue Airways*, 745 F. Supp. 2d 214, 224 (EDNY 2010).  The Plaintiff knew or should have known that making false allegations wherein she is accusing the Diaz Defendants of Rape and Assault would at the very least, likely subject the Defendants to be investigated, interrogated and potentially serious criminal charges.  No reasonable person can say that such actions would inflict emotional distress on a person and

permanently damage their reputation, work and cause humiliation to the accused i.e. Mr. and Mrs. Diaz. As previously stated, Defendant Ada Diaz was subjected to intense interrogation by the NYPD, embarrassed in front of the neighbors when numerous police cars arrived and within her family. Defendant Julio Diaz was investigated by IAB and upon information and belief, a permanent notation is now in his NYPD personnel file. Julio Diaz and Ada Diaz were never criminally charged for the false allegations made by Plaintiff.

As such, the extreme and outrages conduct of the Plaintiff was adequately pleaded and meets the standard for intentional infliction of emotional distress and the counterclaim should not be dismissed.

## CONCLUSION

Wherefore, Defendants respectfully request that the court deny Plaintiff's motion to dismiss as being moot and for the aforementioned reasons; Grant Defendants' Motion to Partially dismiss Plaintiff's complaint; and Grant defendants' motion to amend their Answer with Counterclaims, along with such other and further relief as this courts deems just and proper.

Dated: June 9, 2014

Rocco G. Avallone, Esq.

18