UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NILSA FRANCO,

                                        Plaintiff,        Case No: 14-cv-01909 (ILG) (RER)

                     -against-


ADA DIAZ, JULIO DIAZ and MAXIMINA VARGAS,

                             Defendants.
-------------------------------------------------------------X



### MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO ADMIT PROPOSED AMENDED DEFAMATION COUNTERCLAIMS



Served July 23, 2014

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ 2

TABLE OF AUTHORITIES ..................................................................... 3

INTRODUCTION ..................................................................................... 5

ARGUMENT ............................................................................................. 6

I.     DEFENDANTS' PROPOSED COUNTERCLAIM OF DEFAMATION DOES NOT SATISFY THE FED. R. P. 15 *FOMAN* FACTORS. ............... 6

     A.  Defendants' Counterclaim For Defamation is Proposed in Bad Faith 7

     B.  Defendants' Motion to Amend Their Answer to Include a Counterclaim For Defamation Is Futile, and Should Thus Be Dismissed. ............................................................................................ 8

II.    COUNTERCLAIMS FOR DEFAMATION BROUGHT AGAINST CRIME VICTIMS ARE DETRIMENTAL TO PUBLIC POLICY ................... 10

     A.  Plaintiff Reported Her Grievances In the Only Possible Manner ...... 10

     B.  Defendants Should Be Required to Plead Facts Sufficient to Establish Actual Malice ......................................................................................... 11

     C.  Victims of Crimes Such as Sexual Assault and Trafficking Warrant Special Consideration by the Courts. ...................................................... 12

III.   DEFENDANTS' PROPOSED COUNTERCLAIM FOR DEFAMATION IS RETALIATORY IN NATURE AND THUS FUTILE ................................ 13

CONCLUSION ............................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) .................................................... 9,10

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) ...................................... 9,10

*Bill Johnson's Restaurant, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1981) ................. 13

*Biro v. Conde Nast*, 883 F.Supp.2d 441, 457 (S.D.N.Y. 2012) ........................... 6

*Burlington Northern & Santa Fe Railway Co. v. White,* 548 US 53, 68 (2006) ............... 14

*Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir. 2001) ............................... 14

*Crane v. New York World Telegram Corp.,* 308 N.Y. 470, 126 N.E.2d 753 (1955) ....... 10

*Darveau v. Detecon, Inc.*, 515 F.3d 334, 340-41 (4th Cir. 2008) ..................... 13

*Dodson v. New York Times Co.*, 1998 WL 702277 (S.D.N.Y. 1998) ..................... 8

*Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009) .................................... 14

*Foman v. Davis*, 371 U.S. 178, 182 (1962) .......................................... 6

*Gordon v. New York City Bd. Of Education*, 232 F.3d 111, 117 (2d Cir. 2000) ............ 15

*Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001) ......................................................... 14

*Hemans v. Long Island Jewish Med. Ctr.,* No. 10-CV-1158, 2010 U.S. Dist. LEXIS 115215, 2010 WL 4386692 at 10 (E.D.N.Y. Oct. 28, 2010) ........................... 15

*Higueros v. New York State Catholic Health Plan, Inc.,* 526 F.Supp.2d 342, 347 (E.D.N.Y. 2007) ......................................................... 14

*Jaques v.* Dimarzio, 216 F.Supp.2d 139, 141 (E.D.N.Y. 2002) ........................... 7

*Lee v. Regal Cruises Ltd.*, 916 F. Supp 300, 304 (S.D.N.Y. 1996) ..................... 8

*Liberman v. Gelstein*, 80 N.Y.2d 429, 436, 605 N.E.2d 344, 348 (1992) ............... 9

*Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962) .................................. 7

*Lovejoy –Wilson v. NOCO Motor Fuel, Inc.*, 263, F.3d 209, 223 (2d Cir. 2001) ......... 14

*Lucente v. IBM Corp*, 310 F.3d 243, 258 (2d Cir. 2002) .............................. 8

*Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292 (1960) ...................13

*Mullins v. City of New York,* 626 F.3d 47 (2d Cir. 2010) ...................14

*Paxter v. New York City Dept. of Education No. 08-CV 7673, 2010 U.S. Dist. LEXIS 30399, 2010 WL 1141128* at 8. (S.D.N.Y. Mar. 22 2010) ...................14-15

*Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198-199 (2d Cir. 1990) ...................9

*Rufeh v. Schwartz*, 50 A.D.3d 1002, 1004 (2d Dep't. 2008) ...................10

*Salazar v. Bowne Realty Assocs. L.L.C.*, 796 F. Supp.2d 378 (E.D.N.Y. 2011) ...................8

*Spencer v. International Shoppes, Inc.*, 902 F.Supp.2d 287, 296-97 (E.D.N.Y. 2012) ...................14,15

*Toker v. Polak* 44. N.Y.2d 211, 220 (1997) ...................11

*Wachs v. Winter*, 569 F. Supp. 1438, 1443 (E.D.N.Y. 1983) ...................10

*Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir. 1993) ...................11

*Youngbloods v. BMG Music*, 2011 WL 43510 (S.D.N.Y. 2011) ...................7


**Statutes and Regulations**
29 U.S.C. § 215(a)(3) ...................13
N.Y. Lab. Law § 215(a)(iii) ...................13
Fed R. Civ. P. 15 ...................6

**Secondary Sources**
Moore's Federal Practice and Procedure § 9.50 (2014) ...................8

Eric T. Cooperstein, Protecting Rape Victims from Civil Suits by Their Attackers, 8 Law & Inequality 279, 284 ...................15

Catherine L. Kello, Rape Shield Laws--Is It Time for Reinforcement? 21 U. Mich. J.L. Reform 317 (1987) ...................12

Callie M. Rennison *Rape and Sexual Assault: Reporting to Police and Medical Attention, 1999-2000,* Bureau of Justice Statistics NCJ 194530, Aug 2002, at 2 ...................12

Victims of Trafficking and Violence Protection Act of 2000, *Pub. L No. 106-386, 114 Stat. 1464,§ 102(b)(20)* ...................12

## INTRODUCTION

Plaintiff Nilsa Franco ("Plaintiff") is a victim of labor trafficking violations who filed this civil action against her traffickers, Defendants Ada Diaz, Julio Diaz, and Maximina Vargas (collectively "Defendants"), alleging violations of New York and federal labor law, the Trafficking Victims Protection Act, and New York Tort Law. In retaliation, Defendants filed four frivolous counterclaims against Plaintiff alleging that Plaintiff, in pursuing her rights to bring criminal and civil suits against Defendants, was liable for intentional infliction of emotional distress, negligent infliction of emotional distress, abuse of process, and prima facie tort. Plaintiff immediately moved to dismiss these frivolous counterclaims as absolutely barred by case law, insufficiently pled, and entirely contrary to public policy considerations prohibiting retaliation against victims such as the Plaintiff.

Under the weight of countervailing case law and the insufficiency of the pleaded facts, Defendants voluntarily dismissed three of their counterclaims. Defendants then moved to amend their answer. Their stated goal is to add an additional counterclaim for defamation, again based on Plaintiff's communication with the New York City Police Department ("NYPD"), and to "correct any typos." (Defendants' Memorandum, p. 13) The defamation claim itself is brought with the same bad faith as the three dismissed counterclaims: it is unsupported by the facts alleged in the answer, it is not supported by New York case law, and it contravenes clear public policy intended to support victims in reporting criminal activity to law enforcement. Further, Defendants' characterization of their amendments is disingenuous – they have also added several additional alleged facts, all of which would have been known to them at the time the original Answer was filed, in

order to include ad hominem attacks on the Plaintiff and to gain tactical advantage in arguing against Plaintiff's motion to dismiss.

Plaintiff opposes this motion to amend. The New York Court of Appeals has explained that there is a "particular value" in resolving defamation claims at the pleading stage, "so as not to protract litigation through discovery and trail and thereby chill the exercise of constitutionally protected freedoms" *See Biro v. Conde Nast*, 883 F.Supp.2d 441, 457 (S.D.N.Y. 2012).  Defendants' Motion to Amend should be denied: it is brought in bad faith, the proposed amendments are futile, and it serves only to silence crime victims such as Plaintiff who dare to engage with law enforcement or the civil justice system.

## ARGUMENT

### I.    DEFENDANTS' PROPOSED COUNTERCLAIM OF DEFAMATION DOES NOT SATISFY THE FED. R. CIV. P. 15 *FOMAN* FACTORS

Rule 15(a) of the Federal Rules of Civil Procedure states that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *See* Fed. R. Civ. P. 15(a). The courts consider five factors when deciding whether to grant leave to amend: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors weigh heavily against the Defendants/Movants. Defendants' proposed counterclaim for defamation is frivolous, retaliatory, and lacks support of relevant legal authority to justify such a claim. Courts have shown disdain for such retaliatory

pleadings. *See Jaques v.* Dimarzio, 216 F.Supp.2d 139, 141 (E.D.N.Y. 2002).

Accordingly, the Defendants' defamation counterclaim should be dismissed.

### A. DEFENDANTS' COUNTERCLAIM FOR DEFAMATION IS PROPOSED IN BAD FAITH

The proposed amended counterclaim for defamation has clearly been filed in bad

faith and in retaliation for Plaintiff's commencement of the instant action.  Defendants

have been on notice of the subject police report for the past nine months (Answer ¶¶ 46-

50.) However, it was not until Plaintiff filed a motion to dismiss the initial counterclaims,

did the Defendants propose their defamation claim. (Defendants' Memorandum, p.14.)

During this time, Defendants waived their previous counterclaims of negligent infliction

of emotional distress, abuse of process, and prima facie tort, but now seek to repackage

these claims under a theory of defamation per se. The timing of the amendment is clearly

meant to salvage their frivolous counterclaims in the face of Plaintiff's motion to dismiss

and to gain tactical advantage in the litigation, which is typically held to be in bad faith.

*See Youngbloods v. BMG Music*, 2011 WL 43510 (S.D.N.Y. 2011).

Defendants have requested permission to add the defamation claim because they have

retained new counsel. (Defendants' Memorandum pp.13-14). The retention of new

counsel cannot be a basis for allowance of such a retaliatory counterclaim. The

Defendants are bound by the acts of their previous counsel. As the U.S. Supreme Court

stated:

> "[Petitioner] voluntarily chose his attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney".)  *See Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962).

Further, amended pleadings are generally modifications to incorporate events that were unknown but occurred prior to the original pleading. *See* Moore's Federal Practice and Procedure § 9.50 (2014). Defendants' knowledge that the police report existed as far back as October 2013, but only filing a defamation claim after Plaintiff's motion, indicates that their motion to amend is rendered in bad faith. *See Dodson v. New York Times Co.*, 1998 WL 702277 (S.D.N.Y. 1998) (Amending legal theory is in bad faith when the moving party was aware of the factors at the commencement at the suit); *Lee v. Regal Cruises Ltd.*, 916 F. Supp 300, 304 (S.D.N.Y. 1996).

Finally, Defendants' intent to gain a tactical advantage is clear on the face of their motion. Defendants state for the Court's consideration:

> It is not very hard to image that any claim for intentional infliction of emotion distress that Plaintiff may feel has returned in spades by Defendants, and if the pleading threshold is low enough to admit Plaintiff's claim on this ground, then it must also admit the claim of Defendants *with the net result being that the claims simply cancel each other out.* (Defendants' Memo, p10) (emphasis added).

It is can easily be inferred, by Defendants' own admission, that this act is meant to force the Plaintiff to settle by "canceling out" her intentional infliction of emotional distress claim with one of their own. Like the Defendants' other counterclaims, it is purely a tactical maneuver, proposed in bad faith.

## B. DEFENDANTS' MOTION TO AMEND THEIR ANSWER TO INCLUDE A COUNTERCLAIM FOR DEFAMATION IS FUTILE, AND SHOULD THUS BE DISSMISED.

This District has ruled that a proposed amendment is futile if it would not withstand a Fed. R. Civ. P. (12)(b)(6) motion to dismiss. *Salazar v. Bowne Realty Assocs. L.L.C.*, 796 F. Supp.2d 378 (E.D.N.Y. 2011)(*Citing Lucente v. IBM Corp*, 310 F.3d 243, 258 (2d Cir. 2002). If there is no legal basis for Defendants'

amendment, it should be deemed futile. *See Ronzani v. Sanofi S.A.*, 889 F.2d 195, 198-199 (2d Cir. 1990). A claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

1.  **The Proposed Amendment for Defamation Per Se Based on Injury to Defendants' Professional Reputation is Futile.**

Defendants allege that Plaintiff defamed Defendants Ada Diaz and Julio Diaz in their professional capacities, as an executive assistant and police officer, respectively. (Proposed Amended Answer, ¶64.) This claim entirely misunderstands the nature of defamation per se claims based on injury to professional reputation. A claim that the aggrieved party has been injured in their professional capacity is "limited to defamation of a kind incompatible with the proper conduct of the business, trade, profession or office itself. The statement must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities." *Liberman v. Gelstein*, 80 N.Y.2d 429, 436, 605 N.E.2d 344, 348 (1992). The misconduct alleged by Plaintiff is not of the sort that impugns Defendants' ability to perform in their respective fields. Defendants have not demonstrated that misconduct alleged by Plaintiff is of particular harm to Defendant Ada Diaz's reputation, as an executive assistant. Similarly, the allegations against Defendant Julio Diaz are not specific to the performance of his duties as a police officer. Otherwise, any allegation of any type of malfeasance or misconduct in regards to a police officer could become the basis of a civil suit for defamation per se.

As Defendants have not stated a claim for defamation per se based on injury to the Defendants' professional reputations, the counterclaim must allege actual damages. (*Wachs v. Winter*, 569 F. Supp. 1438, 1443 (E.D.N.Y. 1983) (*Citing Crane v. New York World Telegram Corp.,* 308 N.Y. 470, 126 N.E.2d 753 (1955). Defendants' conclusory claims of harm, that Plaintiff's conduct "subjected them to ridicule, scorn, contempt and disgrace" (Defendants' Proposed Amended Answer, ¶ 68) and that "defendant Julio Diaz's career with the NYPD has been detrimentally tarnished" (Defendants' Proposed Amended Answer, ¶ 51) are speculative and lack the specificity needed to meet the pleading requirements under 12(b)(6). *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)) It is thus futile to admit the amended answer as currently proposed.

## II.   COUNTERCLAIMS FOR DEFAMATION BROUGHT AGAINST CRIME VICTIMS ARE DETRIMENTAL TO PUBLIC POLICY.

Defendants' assertion of a counterclaim for defamation based on Plaintiff's conversations with the police implicates substantial policy considerations. For the reasons explained below, an analysis of these considerations weighs heavily in favor of dismissal of Defendants' motion.

### A.  Plaintiff Reported Her Grievances in the Only Possible Manner.

It is settled law that if Plaintiff had given her account solely to her attorney, it would have been protected by absolute privilege. *See Rufeh v. Schwartz*, 50 A.D.3d 1002, 1004 (2d Dep't. 2008). However, Defendants argue, Plaintiff's conversation with NYPD officers regarding the exact same factual assertions make Plaintiff liable to her traffickers under the theory of defamation per se.

Until October 28, 2013, Plaintiff was without any documentation and laboring in conditions that were in patent violation of state and federal labor law. Plaintiff disclosed her concerns, first to a legal services attorney, and then to New York City police officers, in an effort to obtain the necessary support to leave Defendants' home. This, by nature, required her to tell the officers about her working conditions, the threats of deportation, and the physical abuse that she suffered.

Defendants now seek to proceed with a counterclaim based on these conversations, without any allegations of actual damages and based only on the conclusory allegations that her claims were false and that she acted with malice. To permit this would strike a significant blow to crime victims, particularly victims of trafficking.

### B.  Defendants Should Be Required to Plead Facts Sufficient to Establish Actual Malice

Plaintiff's communications with the police are protected by a qualified privilege in New York. *Toker v. Polak* 44. N.Y.2d 211, 220 (1997). The Defendants have the burden to demonstrate that the statements Plaintiff made were false and that her complaint was filed with actual malice. *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57,61 (2d Cir. 1993); *Liberman v. Gelstein,* 80 N.Y.2d 429, 435 (1992). Here, Defendants' assertion of malice has no factual support beyond a conclusory statement.

Defendants seek to maintain a defamation counterclaim against Plaintiff based solely on conclusory allegations without a shred of factual basis. Defendants' pleadings contain only bare conclusions of falsity and malice, and the purported harm is vague and purely speculative. Given the substantial risk of a "chilling effect" on the reporting of crimes

from defamation counterclaims, Defendants should not be permitted to proceed on the basis of such conclusory pleadings.[1]

### C.  Victims of Crimes Such as Sexual Assault and Trafficking Warrant Special Consideration by the Courts.

Allowing Defendants to proceed is even more problematic given that "[e]xperts, including law enforcement administrators, agree that rape is a highly underreported crime. There are several reasons for the phenomenon. Rape victims fear retaliation by their attackers, [or] are embarrassed or ashamed." (Catherine L. Kello, Rape Shield Laws--Is It Time for Reinforcement? 21 U. Mich. J.L. Reform 317 (1987)). Even by conservative estimates, only 36 percent of rapes, 34 percent of attempted rapes, and 26 percent of sexual assaults are reported. (Recent reports Callie M. Rennison *Rape and Sexual Assault: Reporting to Police and Medical Attention, 1999-2000,* Bureau of Justice Statistics NCJ 194530, Aug 2002, at 2.) A claim for defamation per se based only on a victim's report to the police, without any facts to support falsity or malice can only serve to further depress these numbers.

Victims of trafficking are similarly deserving of special consideration. The Trafficking Victims Protection Act has been enacted to protect victims of trafficking. The 2000 Congressional Committee notes state: "because victims of trafficking are frequently unfamiliar with the laws, cultures, and because they are often subjected to coercion and intimidation….these victims find it difficult or impossible to report the crimes committed

---

[1] The effect on rape victims is all the more troubling, given that a victim will normally have significant difficulty having the claim dismissed at either the pleading or summary judgment stages: "Rape, particularly acquaintance rape, often leaves no corroborating evidence, making conviction difficult.[. . .] This 'unique' felony thus lends itself more readily to harassing defamation suits than other crimes." (Eric T. Cooperstein, Protecting Rape Victims from Civil Suits by Their Attackers, 8 Law & Inequality 279, 284) Defendants seek to use this to their advantage in defending against the instant civil suit, at the expense of crime victims.

against them or to assist in the investigation and prosecution of such crimes." *See* Victims of Trafficking and Violence Protection Act of 2000, *Pub. L No. 106-386, 114 Stat. 1464,§ 102(b)(20).* Defendants are using retaliation measures to intimidate Plaintiff which is clearly against stated public policy. The lack of legal basis in these counterclaims suggest that the only possible motive for asserting them is in retaliation for Plaintiff's attempt to exercise her rights under federal and state labor law. This court should not entertain such a flagrant attempt to intimidate and silence a litigant who has sufficiently plead causes of action for wage theft and labor trafficking.

### III.   DEFENDANTS' PROPOSED COUNTERCLAIM FOR DEFAMATION IS RETALIATORY IN NATURE AND THUS FUTILE.

The Fair Labor Standards Act strictly prohibits any retaliation and discrimination against an employee that commences suit. *See* 29 U.S.C. § 215(a)(3). (Similarly, section 215 of NYLL states that an employer shall not discharge, threaten, penalize, or in another manner discriminate or retaliate against any employee…because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter… N.Y. Lab. Law § 215(a)(iii)). This anti-retaliation provision was meant to "foster a climate in which compliance with the substantive provisions [of FLSA] would be enhanced" by protecting employees who come forward with complaints. *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292 (1960). "By suing an employee who files charges…an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit. *Bill Johnson's Restaurant, Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1981). Plaintiff is a low-wage worker who has limited means to fund a defense. *See Id.* The same reasoning extends to

counterclaims filed by defendants in FLSA actions. *See*, *e.g., Darveau v. Detecon, Inc.*, 515 F.3d 334, 340-41 (4th Cir. 2008).

To make a prima facie showing of retaliation, it must be shown that the plaintiff (1) engaged in protected activity (2) the employer was aware of the activity (3) the employer took adverse action against the plaintiff; and (4) the existence of a causal connection between the protected activity, i.e., "that a retaliatory motive played a part in the adverse employment action." *Spencer v. International Shoppes, Inc.*, 902 F.Supp.2d 287, 296-97 (E.D.N.Y. 2012). *See Also, Mullins v. City of New York,* 626 F.3d 47 (2d Cir. 2010 (FLSA); *Higueros v. New York State Catholic Health Plan, Inc.,* 526 F.Supp.2d 342, 347 (E.D.N.Y. 2007). The causal connection needed for proof of retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action. *See Lovejoy –Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 209, 223 (2d Cir. 2001) (quoting *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir. 2001); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001). The filing of the complaint triggered the Defendants to file a defamation suit against the Plaintiff, possibly dissuading any other individuals in the same situation from exerting their rights in making a charge of discrimination. *See Burlington Northern & Santa Fe Railway Co. v. White,* 548 US 53, 68 (2006).

The court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases'" *Espinal v. Goord,* 558 F.3d 119, 129 (2d Cir. 2009). The element of causal connection need not be based only— or even primarily—on temporal proximity, but may also rely on non-circumstantial evidence, such as written or verbal statements of retaliatory intent. *Paxter v. New York*

*City Dept. of Education No. 08-CV 7673, 2010 U.S. Dist. LEXIS 30399, 2010 WL 1141128* at 8. (S.D.N.Y. Mar. 22 2010). The retaliatory intent is evidenced throughout Defendants' Memorandum of Law (reiteration for statement discussing resolution of case pp 16-17). It can be shown by other actions in the time frame that suggest a retaliatory motive by defendants is acceptable to show the causal connection. *See also Hemans v. Long Island Jewish Med. Ctr.,* No. 10-CV-1158, 2010 U.S. Dist. LEXIS 115215, 2010 WL 4386692 at 10 (E.D.N.Y. Oct. 28, 2010).

Furthermore the *Spencer* court stated that even though the litigation may not be frivolous (even though it clearly is here), it still may be considered retaliatory motivated, even partially, by retaliatory animus. *Spencer* at 294 citing *Gordon v. New York City Bd. Of Education*, 232 F.3d 111, 117 (2d Cir. 2000). The proposed answer is nothing but hostile towards the plaintiff, if not defamatory in itself. Defendants claim, "The words spoken by Plaintiff were entirely false and unfounded, and the Plaintiff knew they were false. Plaintiff knew the Defendants did not batter, assault, rape or attempt to rape her". Defendants have made a personal attack on Plaintiff's filing of a police report through legal conclusions, not alleged facts.

## CONCLUSION

Defendants' proposed defamation counterclaim against Plaintiff is contained within an improper motion for leave to amend Defendants' Answer and Counterclaims, insufficiently pled, asserted in violation of the Fair Labor Standards Act's anti-retaliation provision and contrary to public policy. Accordingly, Defendants' motion for leave to amend their Answer and Counterclaims should be denied.

By: _____/s/_____
Alice Davis, Esq.
adavis@catholicmigration.org
Robert McCreanor, Esq.
rmccreanor@catholicmigration.org
47-01 Queens Blvd., Suite 203B
Sunnyside, NY  11104
(347) 472-3500 (tel.)
(347) 472-3501 (fax)
*Attorneys for Plaintiff*