UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
NILSA FRANCO,

                              Plaintiff,         MEMORANDUM AND ORDER

    - against -                          14-CV-1909 (ILG) (RER)

ADA DIAZ, JULIO DIAZ, and MAXIMINA
VARGAS,

                              Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff, a citizen of Paraguay residing in New York, brings this action against Ada Diaz ("Ada"), Julio Diaz ("Julio"), and Maximina Vargas, alleging violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589, et seq. ("TVPRA"), the Fair Labor Standards Act, 29 U.S.C. §§ 216, et seq. ("FLSA"), and various provisions of the New York Labor Law, as well as claims under New York law for intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and battery. Plaintiff claims that she was induced to come to New York to work for defendants as a domestic servant and nanny, forced to work long hours for little pay, and subjected to verbal and physical abuse as well as threats of deportation. In their answer, defendants assert various counterclaims under New York law. Currently before the Court are plaintiff's motion to dismiss the counterclaims and defendants' motion to dismiss certain counts of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as defendants' motion to amend their

1

answer.[1]  For the reasons that follow, plaintiff's motion to dismiss defendants' original counterclaims is GRANTED, defendants' motion to amend their answer to add a defamation counterclaim is GRANTED, and defendants' motion to dismiss is DENIED.

## BACKGROUND

Except where otherwise noted, the following facts are taken from Plaintiff's complaint, Dkt. No. 1. (the "Complaint"), and are accepted as true for purposes of deciding defendants' Rule 12 motion.  Vargas is plaintiff's aunt.  Ada is plaintiff's cousin and is married to Julio.  In late 2006 or early 2007, Vargas contacted plaintiff's parents about an opportunity for plaintiff to work in the United States as a domestic worker and caretaker for the infant son of Julio and Ada.  Plaintiff would live with the Diaz family and be paid a monthly salary.  Defendants paid all of the fees associated with obtaining a visa for plaintiff and her travel to the United States.  Plaintiff entered the United States in April of 2007 and began working for Julio and Ada.

Shortly after arriving, Vargas took plaintiff's passport under the pretense of needing to show it to an immigration attorney.  Plaintiff asked Ada to return her passport, but Ada told her that the passport had never left plaintiff's possession, and that she must have lost it.  Ada and Vargas both told plaintiff that she could not obtain a new passport without presenting her old one at the consulate, and that attempting to obtain a new passport without her old one would put her at risk of deportation.  Ada and Vargas also told her they would call immigration authorities and have plaintiff deported

---

[1] "Generally, if a defendant wishes to interpose a 12(b) motion, he must do so before filing an answer." Zembrowski v. Denckla, 630 F. Supp. 1307, 1309 n.1 (E.D.N.Y. 1986).  Defendants in this action had already filed their answer by the time they brought their motion to dismiss.  "A motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings[] should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). As "[t]he standard for granting a Rule 12(c) motion . . . is identical to that of a Rule 12(b)(6) motion," the Court will consider defendants' motion as one made under Rule 12(c) and apply the Rule 12(b)(6) standard. See id.

if her work did not meet their standards.  On one occasion, Ada discovered and confiscated a piece of paper on which plaintiff had written the phone number for the Department of Labor.

At the start of her employment, plaintiff worked approximately 10 to 11 hours a day for $400 per month.  In September of 2007, Ada had another child.  Soon after the birth of that child, plaintiff began working approximately 14 hours a day, which continued for the duration of her employment.  Plaintiff was required to make breakfast and dinner for the family, as well as lunch for the children.  In addition, plaintiff was responsible for doing the family's laundry, cleaning, and taking the children to and from school.  Julio and Ada frequently spent weekends out of town, leaving plaintiff alone to care for the children.  From 2009 to 2012, plaintiff received a raise of $100 per month each January, with her salary reaching $800 per month in 2012.  Plaintiff did not receive a raise in 2013.  Throughout the duration of her employment plaintiff was subjected to frequent verbal abuse from Ada and Vargas.

In late 2011, Ada had another child.  In April of 2012, Ada travelled to Paraguay with her two older children, leaving plaintiff in New York to care for the infant, who was then approximately five months old.  During Ada's absence, Julio attempted to rape plaintiff and told her that if she reported it, he would have her deported.

In September of 2013, plaintiff met one of her neighbors at a local Laundromat. He became concerned about plaintiff's safety after being told of her situation.  On October 27, 2013, plaintiff told Ada that she intended to leave the house for the afternoon.  Ada became irate and confiscated plaintiff's key to the home.  Ada then told plaintiff that she would not be paid at the end of the month because, earlier in the month, defendants had paid $1,000 toward plaintiff's father's funeral expenses.

3

Plaintiff left the house after this conversation and did not return until early the next morning. Upon plaintiff's return, Ada called her an ingrate and a prostitute and made other derogatory remarks. Ada also shoved plaintiff during this encounter, and subsequently confiscated plaintiff's cellular telephone. She called the neighbor and told him to stay away from plaintiff.

Later that morning, after Ada had left for work, plaintiff met with the neighbor. He brought her to meet with an attorney from Catholic Migration Services. Plaintiff asked the attorney to help her get a police escort to leave defendants' house. She also asked the attorney for help with obtaining wages defendants owed her. That evening, with police assistance that the attorney was able to obtain, plaintiff left the Diaz home.

In the months that followed, Vargas and Ada made threats against plaintiff to members of her family. In November of 2013, Vargas traveled to Paraguay and told plaintiff's mother that plaintiff "should be careful" if she ever returned to Paraguay. On December 15, 2013, Ada contacted plaintiff's sister via Facebook and told her that plaintiff's "end [was] near."

Plaintiff filed the Complaint in this action on March 25, 2014. Dkt. No. 1. Defendants answered the Complaint on May 12, 2014 and asserted four counterclaims. Dkt. No. 8. On June 16, 2014, plaintiff moved to dismiss those counterclaims. Dkt. No. 17. On July 9, 2014, defendants filed their opposition to plaintiff's motion, simultaneously moving to dismiss certain causes of action in the Complaint and to amend their answer. Dkt. No. 18. In so moving, defendants agreed to withdraw three of their four counterclaims and sought to add an additional counterclaim. See Dkt. No. 20 at 13. On July 23, 2014, plaintiff filed a reply in support of her motion to dismiss defendants' counterclaims (Dkt. No. 24), an opposition to defendants' motion to dismiss

4

(Dkt. No. 25), and an opposition to defendants' motion to amend (Dkt. No. 26).  On July 30, 2014, defendants' filed replies in support of their motion to dismiss and motion to amend.  Dkt. Nos. 28 & 29.

## LEGAL STANDARD

**Motions to Dismiss**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" will not suffice.  Id. (internal quotations and citations omitted).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

5

entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, on a motion to dismiss for failure to state a claim, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar of the City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**Motion to Amend**

Amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure, which states in relevant part that a party may amend a pleading to which a response is required once as a matter of course 21 days after service of either the responsive pleading or a motion under Rule 12 (b), (c), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(B). Beyond that time, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

## DISCUSSION

### I. Plaintiff's Motion to Dismiss Defendants' Counterclaims

In their initial answer, defendants asserted four New York state law counterclaims: abuse of process, IIED, NIED, and prima facie tort. In response to plaintiff's motion to dismiss all of the counterclaims, defendants agreed to voluntarily withdraw their abuse of process, NIED, and prima facie tort claims. Plaintiff renewed her motion to dismiss defendants' remaining counterclaim for IIED, arguing that such a claim cannot be premised on the filing of a criminal or civil complaint and that, in any event, defendants fail to allege facts sufficient to state it.

Under New York law, IIED has four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe

6

emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." Howell v. N.Y. Post Co., Inc., 612 N.E.2d 699, 702 (N.Y. 1993). To satisfy the "extreme and outrageous" element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 90 (N.Y. 1983).

In their initial answer, defendants based their IIED counterclaim on plaintiff "filing false criminal and civil complaints against" defendants and plaintiff's "malicious and deliberate misuse and perversion of the civil and criminal processes." Dkt. No. 8 ¶¶ 66, 68. But it is well established that under New York law, the commencement of litigation, whether civil or criminal, cannot form the basis for an IIED claim. See Walentas v. Johnes, 683 N.Y.S.2d 56, 58 (App. Div. 1999).

Defendants' proposed amended answer now premises their IIED claim solely on plaintiff's statements to the police alleging that Julio and Ada committed crimes against her. See Dkt. No. 23, Ex. D ("Amended Answer") ¶ 71. Although New York law is unclear on this point, the weight of authority suggests that providing false information to the police cannot on its own constitute "extreme and outrageous conduct." See, e.g., Rivers v. Towers, Perrin, Forster & Crosby Inc., No. 07-CV-5441, 2009 WL 817852, at *8 (E.D.N.Y. Mar. 27, 2009) ("Allegations of providing false information to the police, however, do not suffice"); Kaye v. Trump, 873 N.Y.S.2d 5, 6 (App. Div. 2009) (holding that a complaint failed to allege extreme and outrageous conduct even where "defendants variously made rude remarks to and about [plaintiff], commenced two baseless lawsuits and filed a criminal complaint against her, and frightened her and her

daughter by attempting to instigate her arrest"); Villacorta v. Saks Inc., 932 N.Y.S.2d 764 (table), 2011 WL 2535058, at *7 (Sup. Ct. May 6, 2011) (collecting cases).

In any event, defendants' IIED counterclaim must be dismissed for an additional reason. Defendants now seek to assert a defamation counterclaim, and New York courts have repeatedly stated that an IIED claim should be dismissed when it falls "within the ambit" of another tort, such as defamation. See, e.g., Hirschfeld v. Daily News, L.P., 703 N.Y.S.2d 123, 124 (App. Div. 2000); Herlihy v. Metro. Museum of Art, 633 N.Y.S.2d 106, 114 (App. Div. 1995). Federal courts in this Circuit have consistently applied this principle at the motion to dismiss stage. See, e.g., McNamee v. Clemens, 762 F. Supp. 2d 584, 608–09 (E.D.N.Y. 2011); Fordham v. Islip Union Free Sch. Dist., 662 F. Supp. 2d 261, 276 (E.D.N.Y. 2009). Because precisely the same conduct and the same injury fall within the ambit of defendants' proposed defamation counterclaim, their IIED counterclaim in the Amended Answer must be dismissed as duplicative.

## II. Defendants' Motion to Amend

Having agreed to withdraw three of their counterclaims, defendants seek leave to amend their answer to add a counterclaim for defamation, which is premised on plaintiff's statements to the police that Julio attempted to rape her and Ada assaulted her. Because defendants sought to amend their counterclaims more than 21 days after plaintiff served her motion to dismiss, leave of the Court was required and not obtained. See Fed. R. Civ. P. 15(a). Although leave to amend should be "freely given," a court may deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Plaintiff argues that defendants' motion to amend should be denied because their proposed defamation

8

counterclaim is futile, asserted in bad faith, violative of the FLSA, and contrary to public policy.

### A. Futility

An amendment is futile if the proposed amended claim would not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002). To state a claim for defamation under New York law, defendants must allege (1) a false statement, (2) that was published to a third party without privilege or authorization, (3) which constituted fault as judged by, at a minimum, a negligence standard, and (4) either caused a special harm or constituted defamation per se. McNamee, 762 F. Supp. 2d at 599–600; see also Stepanov v. Dow Jones & Co., 987 N.Y.S.2d 37, 41–42 (App. Div. 2014). A defamatory statement addressed to the eye, such as a writing or a photograph, is libel. One addressed to the ear, such as a spoken word, is slander. Ava v. NYP Holdings, Inc., 885 N.Y.S.2d 247, 251 (App. Div. 2009). The defamation claimed here is slander, based upon the spoken accusations of rape and assault made by the plaintiff to the police.

Plaintiff claims that defendants' failure to plead special damages attributable to the slander renders the counterclaim futile. Her argument is without merit. A slander is per se actionable, requiring neither pleading nor proof of special damages, if it (1) charges another with a serious crime, (2) tends to injure another in his or her trade, (3) claims that an individual has a loathsome disease, or (4) imputes unchastity to a woman. See, e.g., Zherka v. Amicone, 634 F.3d 642, 645 n.6 (2d Cir. 2011); Liberman v. Gelstein, 605 N.E.2d 344, 347 (N.Y. 1992). The accusations of rape and assault made by plaintiff charge Julio and Ada with serious crimes, and therefore defendants need not

9

plead special damages.  See, e.g., Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 62 (2d Cir. 1993) (assault); Restatement (Second) of Torts § 571 cmt. g (1977) (rape).

Plaintiff next argues that defendants have failed to sufficiently allege that her statements to the police were not privileged.  Under New York law, reporting a crime to the police is protected by a qualified privilege.  See, e.g., Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 409–10 (2d Cir. 2000); Present v. Avon Prods., Inc., 687 N.Y.S.2d 330, 334 (App. Div. 1999).  This privilege is lost, however, when the report is made with "actual" malice—that is, with a high degree of awareness of its probable falsity or while the speaker entertained serious doubts as to its truth.  Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 98-99 (2d Cir. 2000).  The burden of proof of privilege rests on the alleged defamer, while the burden of proving malice rests on the defamed.  See Weldy, 985 F.2d at 62.

Defendants' Amended Answer alleges that plaintiff made knowingly false statements to the police, which sufficiently pleads malice.  See Boyd, 208 F.3d at 410 (citing Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 667 (1989)).  Plaintiff's contention that malice must be pleaded with greater factual specificity finds no support in either case law or the Federal Rules of Civil Procedure.  See id.; Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally").  For all of these reasons, defendants' proposed defamation counterclaim is not futile.

### B. Bad Faith

Plaintiff next argues that defendants' proposed amendments are pleaded in bad faith.  "While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, '[a] finding that a

10

party is seeking leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith.'" Youngbloods v. BMG Music, No. 07 Civ. 2394, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011) (citation omitted).  Aside from simply asserting it, plaintiff offers no explanation for what "tactical advantage" defendants would gain by amending their answer now, and her argument fails accordingly.

Plaintiff also contends that an amendment is in bad faith if offered in response to a motion to dismiss that is likely to prove successful, or when the amendment advances a new legal theory in response to a dispositive motion despite the pleader being aware of the facts underpinning that theory when it filed its initial pleading.  While such amendments sought in response to summary judgment motions might be disfavored, see Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 304 (S.D.N.Y. 1996), the Federal Rules of Civil Procedure encourage them in response to motions to dismiss.  Fed. R. Civ. P. 15(a)(1)(B) (providing for amendment as a matter of course following a 12(b) motion); id., 2009 Advisory Committee Note ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim").  Given the foregoing, the proposed amendments were not pleaded in bad faith.

### C. FLSA & Public Policy

Finally, plaintiff asserts that defendants should not be allowed to plead their defamation counterclaim because it was made in retaliation to her complaint (in violation of the FLSA) and, if allowed, would discourage others from pursuing such claims.  Plaintiff cites no case law or statutory authority for these propositions, and the

Court can find none.  Defendants' defamation counterclaim is neither futile nor submitted in bad faith, and leave to amend is granted.

### III. Defendants' Motion to Dismiss Certain Claims

In addition to opposing plaintiff's motion to dismiss their counterclaims, defendants have moved to dismiss plaintiff's claims under the TVPRA, her claims for IIED and NIED, and her battery claims, alleging that each fails to state a claim upon which relief may be granted.

#### A. TVPRA

Defendants challenge the first, second and third causes of action, which arise under separate provisions of the TVPRA.   None of their arguments are availing.

##### 1. 18 U.S.C. § 1589(a)

The TVPRA creates a private right of action for victims of trafficking, and provides for civil liability of any person who

> provides or obtains the labor or services of a person . . . (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).  For purposes of a TVPRA claim, "'[s]erious harm' includes threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services." Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427, 443 (E.D.N.Y. 2013) (citation omitted).  "'Abuse of the law or legal process' is the use of threats of legal action, whether administrative, civil, or

criminal, in any manner or for any purpose for which the law was not designed in order to coerce someone into working against that person's will." Id. at 444 (citation omitted).

Defendants argue that all of plaintiff's claims under the TVPRA must be dismissed because plaintiff does not allege that she was subjected to any threat of force or serious harm. This argument is entirely meritless. The Complaint explicitly states that defendants threatened to have plaintiff deported if her work did not meet their standards, and it is well established that "[t]he threat of deportation alone may support a claim for forced labor." E.g., Aguirre, 961 F. Supp. 2d at 444 (collecting cases).

Defendants also claim that plaintiff was free to leave the Diaz home unaccompanied, and submit what they claim is photographic evidence in support of that assertion. See Dkt. No. 20 at 7 (citing Defs.' Ex. B (Dkt. No. 22)). In ruling on a motion to dismiss for failure to state a claim, a district court may consider only the factual allegations contained in the pleadings, documents attached to the pleadings or incorporated by reference, documents a plaintiff knew of and relied on in drafting the complaint, and matters of public record of which judicial notice may be taken. E.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Wong v. CKX, Inc., 890 F. Supp. 2d 411, 415 (S.D.N.Y. 2012). The photographs are none of the above, and the Court therefore excludes them from consideration here.

In any event, it is of no consequence that plaintiff was sometimes left alone at defendants' house, that she could leave unaccompanied, or that she never attempted to leave and find different employment. The TVPRA does not require that plaintiffs be kept under literal lock and key. Rather, it was enacted as a rejection of case law that "limited the definition of involuntary servitude to 'physical' or 'legal' coercion," and was intended to "reach cases in which persons are held in a condition of servitude through

13

nonviolent coercion." United States v. Dann, 652 F.3d 1160, 1170 (9th Cir. 2011). Plaintiff sufficiently alleges that she was coerced into working by threats of deportation if her work was not satisfactory. Accordingly, she has properly stated a claim under 18 U.S.C. § 1589(a).

### 2. 18 U.S.C. § 1590(a)

The TVPRA also provides for liability of any person who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590(a). Plaintiff alleges that she was recruited by defendants to work in the United States, with their arranging for her visa, paying her expenses, and providing her with housing after her arrival. By combining these claims with the alleged violations of Section 1589(a) described above, plaintiff has stated a claim under Section 1590(a).

### 3. 18 U.S.C. § 1592(a)

Finally, the TVPRA also provides for liability of any person who "knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person" in connection with a violation of the statute. 18 U.S.C. § 1592(a). Plaintiff alleges that Vargas took her passport under false pretenses shortly after her arrival, and that she believes Ada later came into possession of it. In connection with the purported violations of Section 1589(a) set forth in plaintiff's first cause of action, these allegations are more than sufficient to state claims under Section 1592(a).

### B. Infliction of Emotional Distress

Under New York law, IIED and NIED both require a plaintiff to allege extreme and outrageous conduct as well as a causal connection between that conduct and severe emotional distress. E.g., Alexiadis v. N.Y. Coll. of Health Professions, 891 F. Supp. 2d 418, 436-37 (E.D.N.Y. 2012). IIED additionally requires allegations of intent to cause severe emotional distress. Id. at 437. NIED usually requires that the emotional distress in question stem from physical injury, but a claim may also lie if a plaintiff suffers purely emotional harm caused by a defendant's breach of a duty owed directly to the plaintiff which either endangered her physical safety or caused her to fear for that safety. Id. at 436 (citing Lancellotti v. Howard, 547 N.Y.S.2d 654, 655 (App. Div. 1989)).

Defendants assert that plaintiff has failed to allege sufficiently extreme and outrageous conduct. In light of the foregoing discussion of plaintiff's TVPRA claims, their assertion is meritless to the point of frivolousness. Defendants attempt to buttress their unavailing argument by mischaracterizing the Complaint as merely alleging harassment in "the employment context" or claims "by one family member against another." That characterization, if credited, would neuter the TVPRA, which is aimed precisely at allegations such as these. The Complaint alleges claims that are patently not ordinary workplace or familial disputes.

With respect to plaintiff's NIED claim, defendants, apparently conceding that they owed a duty to plaintiff, assert only that the Complaint lacks any allegation that plaintiff feared for her physical safety or that her physical safety was endangered. Given the allegations of the Complaint, it suffices to say that their accusations could only be made with tongue in cheek, and are patently meritless.

### C. Battery

Under New York law, battery is defined as intentional wrongful physical contact with another person without consent. E.g., Green v. City of New York, 465 F.3d 65, 86 (2d Cir. 2006); Charkhy v. Altman, 678 N.Y.S.2d 40, 41 (App. Div. 1998). Plaintiff's allegation that Ada intentionally shoved her on October 28, 2013 is a classic claim of battery. Defendants' assertions that Ada could not have committed battery because she was acting *in loco parentis* and her conduct was akin to disciplining plaintiff are meritless, if not frivolous.

With respect to Julio, plaintiff's alleged claim of battery is his attempt to rape her in April of 2012. Defendants' motion to dismiss this claim is based on New York's one-year statute of limitations for battery. See N.Y. C.P.L.R. § 215(3). Plaintiff argues that her claim is subject to equitable tolling and is therefore not time-barred. Under New York law, a plaintiff may invoke the doctrine of equitable tolling to defeat a statute of limitations defense "when [she] was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565, 568 (App. Div. 2005) (internal quotations and citation omitted). "[W]hen plaintiffs raise an equitable tolling argument, a court must deny a motion to dismiss based on the statute of limitations unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled." In re S. African Apartheid Litig., 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009).

Plaintiff alleges that Julio said she would be deported if she ever reported the attempted rape. Additionally, she claims that she labored under a misrepresentation by defendants regarding her missing passport. At the motion to dismiss stage, these allegations are sufficient to defeat defendants' statute of limitations defense. See, e.g.,

16

Kiwanuka v. Bakilana, 844 F. Supp. 2d 107, 118 (D.D.C. 2012) (applying equitable tolling to claims brought by a foreign worker whose employers "confiscated her identity documents and passport, threatened her with deportation, and forced her to remain completely dependent upon them"); Deressa v. Gobena, No. 1:05CV1334, 2006 WL 335629, at *1, 3–5 (E.D. Va. Feb. 13, 2006) (applying equitable tolling in holding that threatening a foreign worker with deportation and generally preventing her from leaving her place of employment "constitute[d] affirmative acts designed to prevent [her] from . . . taking steps to enforce her contractual and common law rights"). Accordingly, defendants' motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to dismiss defendants' original counterclaims is GRANTED, defendants' motion for leave to amend its answer to add a counterclaim for defamation is GRANTED, and defendants' motion to partially dismiss the Complaint is DENIED. Defendants shall file their proposed amended answer, without the IIED counterclaim that was dismissed in this Memorandum and Order, no later than September 26, 2014.

SO ORDERED.

Dated: Brooklyn, New York
September 12, 2014

/s/
I. Leo Glasser
Senior United States District Judge